**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. JKB-22-00439** |
| | * | |
| **WAYNE PRINCE,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | ******* | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

On August 7, 2018, Bryan McKemy told his father that he loved him.  He then went to work like it was any other day.   He had no association with the violent Black Guerilla Family ("BGF") gang.  He was not involved in any type of violent, public dispute.  He was simply putting in an honest day of work.  And on that day his life was tragically cut short by Wayne Prince.

The defendant, Wayne Prince, and his co-conspirator, murdered Bryan McKemy while he was working on a house renovation project.  The murder was senseless.  Prince and his conspirators were hired by Devante Harrison, a/k/a "YGG Tay," a prominent Baltimore rapper, to murder Ryan Brunson, the man who owned the house.  Brunson was involved in a violent dispute with Harrison.  Bryan McKemy had nothing to do with any of that.  And yet, Prince and his co-conspirator stood on the back porch of the house and gunned him down that day.

Given the gravity of the offense in this case, the government submits that a sentence of 348 months (29 years) imprisonment (the top end of the jointly recommended range) is a sufficient, but not greater than necessary, sentence for Wayne Prince.

1

## I.      RELEVANT FACTUAL BACKGROUND

Wayne Prince is a member of the Black Guerilla Family ("BGF"), a nationwide gang operating in prisons and on the streets of various cities throughout the United States.  Founded in California in the 1960s, BGF first appeared in the Maryland correctional system in the 1990s. Although nominally still a prison gang, BGF has long been involved in criminal activity, including murder, murder for hire, robbery, drug trafficking, obstruction of justice and witness tampering throughout communities in Baltimore City.

As a member of BGF, Prince agreed to conduct and participate in BGF's affairs through a pattern of racketeering activity that included conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, robbery, and murder.

Prince, along with five co-defendants, was indicted in his case with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  ECF No. 1.  He entered a guilty plea to the single-count Indictment on January 3, 2024.  ECF No. 158.  As part of his plea agreement stipulated facts, he agreed that "Overt Acts" in which he is named in the Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.  ECF No. 158 at 9.

He, therefore, admitted that between 2014 and 2021, he conspired to distribute and distributed heroin, cocaine, marijuana and ecstasy at street-level drug "shops" in Baltimore City (Overt Act #2), and that he specifically distributed and possessed with intent to distribute cocaine in the 2500 block of McHenry Street on September 19, 2019 (Overt Act #40).  He also admitted to the unlawful possession of firearms.  For example, on February 24, 2021, Prince possessed a loaded Smith & Wesson .40 caliber handgun (Overt Act #46), and on July 26, 2021, Prince possessed a Ruger .45 caliber handgun (Overt Act #48).

Turning to the most serious conduct, Prince admitted that on August 7, 2018, in the 4500

2

block of Woodlea Avenue, he and two co-conspirators, including Co-Conspirator 1, attempted to murder Ryan Brunson.  The attack took place at a home that Brunson owned and was having renovated.  A construction crew was on site at the time.  During the attack, Prince and an unindicted co-conspirator murdered one of the construction workers, Bryan McKemy, using a .40 caliber handgun.  They also shot a second construction worker, R.P., in the head, who survived the attack (Overt Act #31).

At the time, Ryan Brunson was involved in a public "beef" with Baltimore rapper Davante Harrison, one of Prince's co-defendants in this case.  Brunson and his associate, Raytawn Benjamin, had publicly accused Harrison of being a "rat."  The day before the murder of Bryan McKemy, Prince bragged on a recorded jail call that he was "mixed in" with Harrison and his associates (Overt Act #30).  In response to someone alleging that Harrison had cooperated with police, Prince explained, "I know the whole thing, my n***, I be with those n****s 24/7 now."

Additionally, after the murder on August 7, 2018, Prince participated in another recorded jail call, in which he bragged to an associate, "I'm about to get some money soon," referring to an expected payment from Harrison for his role in the attempted murder of Brunson (Overt Act #33).  Over the following three days – between August 7, 2018 and August 9, 2018 – Prince exchanged messages with a now-deceased member of Harrison's inner circle, in which the Prince made arrangements to collect payment from Harrison for his role in the attack at Brunson's home (Overt Act #34).

Additionally, on August 16, 2018, Prince and David Warren, another of Prince's co-defendants, jointly and unlawfully possessed the Glock 22 .40 firearm used in the murder of Bryan McKemy and the non-fatal shooting of R.P. (Overt Act #35).  The firearm was recovered from within a maroon Toyota Avalon that was used in the shooting on August 7, 2018.  Prince's

cell phone was also recovered from within that Avalon. The firearm was ballistically tested. In addition to being used in the murder on August 7, 2018, the firearm was also determined to have been used in a number of murders and non-fatal shootings in Baltimore City and Baltimore County between March and August 2018, including the attempted murder of Jonus Ben on June 27, 2018 in Baltimore County (Overt Act #29). Warren pled guilty in Baltimore County Circuit Court to the non-fatal shooting of Jonus Ben.

## II.      ADVISORY SENTENCING GUIDELINES

The government agrees with the Sentencing Guidelines calculated by the U.S. Probation Office. ECF No. 187. The base offense level for a violation of 18 U.S.C. § 1962(d) is the greater of 19 or the underlying racketeering activity. In this case, the underlying racketeering activity includes, but is not limited to, First Degree Murder; therefore, USSG §2A1.1 is referenced when determining the offense level. The base offense level is 43. USSG §§2E1.1(a)(2) and 2A1.1(a). The defendant also received separate base offense levels for the attempted murders on August 7, 2018, but the adjusted offense level remains 43 pursuant to USSG §3D1.4. After a 3-level reduction for acceptance of responsibility, the defendant's total offense level is 40.

The government agrees with the U.S. Probation Office that Prince is a criminal history category IV. ECF No. 187, ¶ 53. In his sentencing memorandum, the defendant mistakenly classifies himself as a criminal history category III and then argues that various convictions should not score. ECF No. 199 ("Defense Memo") at 1-2. His arguments are meritless. The defendant does not provide any support for ignoring his juvenile convictions. There is no argument that Probation did not properly follow the Guidelines provision (4A1.2(d)(2)(A)) for calculating juvenile criminal history points. What's more is that the conduct was serious, particularly the handgun violation charge when he was 16. As discussed above, Prince's conduct

in this case is littered with the unlawful possession of firearms.  His first conviction to an offense of that type is certainly relevant and serious conduct.

The defendant also argues that his assault conviction on July 12, 2019 is related to the instant offense and should therefore not score for purposes of his criminal history.  Defense Memo at 2.  But while the incident took place in an area where BGF gang members are known to operate and sell CDS, there is no evidence that that the defendant's conduct in that case had anything to do with his membership in BGF.  There is simply not enough information in the Presentence Investigation Report to make that determination.

Regardless, even if that assault conviction did not score, the defendant would still be a criminal history category IV.  With that criminal history category, and a total offense level of 40, the defendant's advisory sentencing guidelines are 360 months to life in prison.

Notably, the U.S. Probation Office recommends a sentence of 360 months, noting that the defendant is "responsible for one of the most heinous acts of violence," he was on supervision in multiple cases during his conduct in this case, and has been involved in the criminal justice system since age 14.  ECF No. 187 at 23.

The government's recommended sentence in this case, 348 months, is below the Guidelines.

### III.    18 U.S.C. 3553(a) SENTENCING FACTORS

The United States submits that a sentence of 348 months (29 years), which is a modest downward variance from the Guidelines range, would be sufficient, but not greater than necessary, under the factors set forth in 18 U.S.C. § 3553(a).  This case involved the loss of an innocent life and the non-fatal shooting of another.  Prince joined a violent gang and agreed to commit murder in exchange for monetary payment.  He ended up killing someone entirely unrelated to the dispute

that he and Harrison were involved in.  Prince has also had a long and significant criminal history, going back to before the age of 14.  The PSR and his conduct in this case reflects that he has been engaged in criminal conduct virtually non-stop for the last decade. A significant sentence in this case is necessary to reflect the seriousness of the charged offense and as deterrence for an individual who up to this point has not yet been deterred and remains a danger to the community.

### A. Nature, Circumstances, Seriousness of the Offense, and Just Punishment

All losses of life are tragic.  But the circumstances of this case are especially so.  Bryan McKemy's death was senseless.  He was an innocent person who just went to work that day.  He had nothing to do with Wayne Prince, Davante Harrison, David Warren, or the violent "beef" that wreaked havoc on Baltimore City and Baltimore County in 2018.  But that didn't stop Wayne Prince from firing at Bryan McKemy as he worked right inside the sliding back door of the house.

The Victim Impact Statements in this case reflect the immense and excruciating loss felt by Bryan McKemy's family and friends.  Their lives were forever ruptured by the actions of Wayne Prince.  The hole in their lives from Bryan's death will never be filled.  *See* Exhibit A (Victim Impact Statements).

Wayne Prince deserves a sentence that properly accounts for the magnitude of that loss.  The defendant's sentencing memorandum goes into great detail on the difficult aspects of Prince's life. And it is certainly clear that Prince experienced hardship and witnessed violence from a young age. But that does not and should not excuse the choices that he made.  Not only did he associate with a violent gang, but he agreed to carry out murder in exchange for payment.  Bryan McKemy was being paid on August 7, 2018 for his work in construction.  Wayne Prince was being paid to take a human life.

Bryan McKemy was not the only victim on August 7, 2019.  When Prince and his co-

conspirator attacked the home that day, victim R.P. was also shot in the head.  He was rushed to the hospital and survived.  A significant sentence is necessary to reflect the seriousness of Prince's conduct that day.  There is nothing worse than taking an innocent life.  The Court's sentence should send that message.

Prince's conduct in this case, though, did not start and end with the shooting in the 4500 block of Woodlea Avenue.  He joined BGF and agreed to conduct and participate in BGF's affairs through a pattern of racketeering activity.  In addition to the violence he perpetrated on August 7, 2019, he also trafficked dangerous drugs for years until his arrest in 2021.  Prince pushed poison into the streets of Baltimore.  As this Court is well aware, drug dealing and violence often go hand in hand.

Finally, Prince has a long history of unlawful firearm possession, including his two arrests in 2021.  In his sentencing memorandum he inexplicably claims that they were obtained for "self-protection."  Perhaps that was part of it, but Prince's cell phone returns and social media accounts tell an entirely different story.  They show a man who was constantly armed with dangerous firearms and flaunting them to the world.  Indeed, this was someone who had actually used a gun when he shot at Bryan McKemy and R.P.

Throughout the pendency of this investigation, law enforcement searched Prince's cell phones and his social media accounts.  The returns that were analyzed were chock full of videos and pictures of Prince toting dangerous guns.  The following are just a few examples from the phone seized from Prince in February 2021.

December 28, 2020 (Prince circled)                    November 13, 2020




November 12, 2020                                             November 12, 2020




The government has also attached, by way of example, two videos of Prince brandishing

firearms discovered in a cell phone seized by law enforcment on August 16, 2018, nine days after

the shooting at Woodlea Avenue.  In one video, Prince raises a handgun in the air and fires while talking to the camera.  Exhibit B.  In another video, Prince points two large guns at the camera and mimics firing while boasting that "we blowing n**** up … all summer, all 2018."  Exhibit C.[1]

These photos and videos are only a sample of what investigators discovered in Prince's cell phones and social media accounts.  Prince is someone who trafficked in dangerous drugs, possessed and flaunted firearms, including assault rifles, and acutally perpetrated violence as a contract killer.  A sentence of 348 months is necessary to reflect the seriousness of the crime in this case.

### B.  History and Characteristics of the Defendant

Prince has had a long history with the criminal justice system.  The Presentence Investigation report details his criminal conduct from 2013, when he was 14, through his indictment in this case in December 2022.  As noted above, his string of unlawful firearm possession convictions started in 2015 at the age of 16.  From there, he sustained three felony convictions.  In July 2019, he was convicted of second-degree assault.  The PSR includes language from the Statement of Probable Cause in that case.  Prince was accused of throwing a brick at the head of a Lyft driver who had pulled up to pick up a rider.  Prince received two years of probation, which the PSR notes were not successful because he continued his criminal conduct.

Prince sustained another second-degree assault conviction in 2019.  This time he was accused of repeatedly striking his girlfriend and the mother of his child at his residence on East Preston Street.  He was also accused of pouring bleach on her and holding a gun to her head and threatening to kill her.  According to the PSR, a search warrant was later executed at the house and law enforcement recovered ammunition, a magazine, and a loaded shotgun.  Prince was charged

---

[1]     The government will deliver a courtesy copy of this sentencing memorandum and a hard copy disc with Exhibits B and C to the Court.

with a handgun possession count that was nolle prossed.

Turning to July 2021, Prince was again convicted of a firearms offense. BPD officers were surveilling East Preston Street, an area known to them for drug trafficking and violent crime. Officers saw an item in the defendant's waistband. As the officers exited their car, Prince fled. He was ultimately apprehended, and officers recovered from him a loaded .45 caliber handgun. In addition to his various convictions, Prince was also arrested for numerous charges of assault, drug trafficking, and firearm possession.

The PSR also details Prince's personal and family history. Prince reported that he had a strong relationship with his mother who neither abused nor neglected him. Unfortunately, as with many kids growing up in Baltimore, he experienced violence around him at a young age and himself was the victim of violence in 2021 when he was shot and in 2022 when he was stabbed at Central Booking. None of that, though, excuses his behavior over the years, especially the serious conduct he's admitted to in this case. A significant period of incarceration is necessary in light of the defendant's extensive criminal history.

### C. The Need for Specific and General Deterrence and Respect for the Law

Prince, despite numerous run ins with the criminal justice system over the years, was never deterred. Following his convictions, and periods of incarceration, he went right back to engaging in conduct that endangered the community. He never served a substantial period of time in jail. It is the government's hope that a significant sentence in this case will finally get through to Prince. A lengthy sentence is necessary to protect the community and to hopefully deter Prince from engaging in additional criminal activity when he is eventually released from prison.

Moreover, a substantial sentence in this case is also necessary to send a loud and clear message that violent crime, particularly murder, will be treated seriously by the Court. Far too often

violent crime goes unpunished in Baltimore.   This Court has the opportunity to create general deterrence with this sentence.   Other gang members should understand that if they're indicted and found guilty in this courthouse, they will not receive a slap on the wrist.

### D.  The Need to Provide Restitution

The Government seeks restitution on behalf of Bryan Mckemy's family in the amount of $3,000.00 pursuant to 18 U.S.C. §§ 3663.   The McKemy family reported paying $8,000 for the funeral, of which $5,000 was reimbursed through a fund set up to support them. The McKemy family is gathering documentation of those costs, which will be submitted to the Court at sentencing.

### E.  Credit for Time Served

The defendant requests credit for time served for a number of his prior arrests and convictions in state court, pursuant to 18 U.S.C. §3585(b).   As an initial matter, the Bureau of Prisons (BOP) "is responsible for implementing this provision."   *Owens v. United States*, No. CIV.A. RDB-12-2979, 2012 WL 5305328, at *1 (D. Md. Oct. 25, 2012) (*citing United States v. Wilson*, 503 U.S. 329, 112 (1992)).   That being said, the defendant is incorrect that he should receive credit for his roughly 6-month prison sentence based on his unlawful firearm possession on July 26, 2021.   *See* Defense Memo at 9.   The defendant was ultimately convicted in state court on that charge and his imprisonment was therefore "credited against another sentence."   18 U.S.C. §3585(b)(2).   It is of no moment that his conduct was subsequently alleged as an overt act in the present case.   The defendant already received credit for that time in prison for his state conviction, and the BOP will therefore not credit that time towards the sentence he receives in this case.

### CONCLUSION

The government believes that a sentence of 348 months (29 years) of imprisonment is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:   _____/s/_____
       Ari D. Evans
       Patricia C. McLane
       Kim Y. Hagan
       Assistant United States
       Attorneys
       36 S. Charles St., Fourth Floor
       Baltimore, Maryland 21201

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of May, 2024, a copy of the foregoing Government's Sentencing Memorandum was served via e-mail and electronically through the Clerk of the United States District Court using CM/ECF to defense counsel of record.

_____/s/_____

Ari D. Evans
Assistant United States Attorney
